ERIC GRANT
United States Attorney
ADRIAN T. KINSELLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JAMESON CHAND,<br><br>Defendant. | CASE NO.  2:21-CR-00158-JAM<br><br>**AMENDED**[1] UNITED STATES' REVOCATION HEARING BRIEF<br><br>DATE: June 30, 2026<br>TIME: 9:00 a.m.<br>COURT: Hon. John A. Mendez |

The government hereby submits this supervised release revocation hearing brief setting forth a summary of: (1) the relevant procedural history, (2) the maximum statutory penalties and sentencing guidelines calculations, (3) the legal standards and evidentiary issues, and (4) a brief analysis of the government's proof as to the disputed charge.

## I.    PROCEDURAL HISTORY

The defendant was originally on a three-year term of federal probation in this case following his February 11, 2025 conviction for cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B).  ECF No. 94. Given that he initially received a time-served sentence, he began serving his probation on the same day. *Id.*  On November 4, 2025, this Court signed a warrant for Chand's arrest based on the Probation Office's petition that he violated his terms of probation by possessing an internet capable cellular phone. ECF No. 95.  On March 10, 2026, this Court revoked the defendant's probation and sentenced him to a

---

[1] This amended brief corrects the language under Charge 1, and corrects a 2024 date to 2026.

term of imprisonment of time served (about four months), and imposed a term of supervised release of 36 months.  ECF No. 112.

The defendant lasted only ten days on supervised release before this most current arrest.  On March 19, 2026, the Court signed a second warrant for Chand's arrest based on the Probation Office's petition that he violated his terms of supervised release by again possessing an internet capable device (a tablet).  ECF No. 113.  Officers arrested Chand the following day, and he has been in custody since.  ECF No. 121.  On April 1, 2026, the Probation Office sought and obtained a superseding petition, adding a charge that the defendant possessed sexually explicit conduct.  ECF No. 124.  On April 28, 2026, the defendant denied all three charges of the superseding petition.  ECF No. 128.  The matter is currently set for a revocation hearing on June 30, 2026.  ECF No. 130.

## II.    MAXIMUM PENALTIES AND GUIDELINES CALCULATIONS

Each charge alleged is a Grade C violation. At the time of sentencing, Chand was in Criminal History Category II. The applicable guideline range in this case is 4 to 10 months.  U.S.S.G. § 7B1.4(a). Because the underlying federal offense was a Class D felony, the defendant is subject to a statutory maximum of two years in prison.  18 U.S.C. § 3583(e)(3).

## III.    LEGAL STANDARDS

### A.    The Legal Standard Applicable to Revocation of Supervised Release.

To revoke a term of supervised release, the Court must find only that an offender violated the terms of supervised release by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3). This standard has been upheld, even though the resulting punishment may result in incarceration. See *Johnson v. United States*, 529 U.S. 694, 700 (2000) ("Although such violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt.").

### B.    Reliable Hearsay is Admissible at a Supervised Release Revocation Hearing.

The Federal Rules of Evidence do not apply at a supervised release revocation proceeding. Fed. R. Evid. 1101(d). Revocation of supervised release is not a criminal prosecution for Sixth Amendment purposes because the violation "simply triggers the execution of the conditions of the original sentence." *United States v. Gavilanes-Ocaranza*, 2014 WL 6657029 (9th Cir. Nov. 25, 2014) (citing *United States*

*v. Paskow*, 11 F.3d 873, 881 (9th Cir. 1993)). The offender thus has no Sixth Amendment right to confront witnesses. While the offender has a due process right to confront witnesses, as codified in Rule 32.1(b)(2), that right does "not rise to the level of similar rights at a criminal trial*." United States v. Martin*, 984 F.2d 308, 311 (9th Cir. 1993).

The Ninth Circuit construes the due process confrontation right "as requiring that a supervised releasee receive a fair and meaningful opportunity to refute or impeach the evidence against him in order 'to assure that the finding of a [supervised release] violation will be based on verified facts.'" *Id*. at 310 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 484 (1972)). Due process in the revocation context is flexible in its scope; "it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Id.* (quoting *Morrissey*, 408 U.S. at 481). The court balances the offender's right to confrontation against the government's "good cause for denying it." *Id.* (*quoting United States v. Simmons*, 812 F.2d 561, 564 (9th Cir. 1987)). "The balancing test is a workable means 'to assure that the finding of a [supervised release] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [releasee's] behavior.'" *Id.* at 314 (quoting *Morrissey*, 408 U.S. at 484).

In analyzing whether an offender's due process rights have been violated, the court looks to (1) "the importance of the evidence to the court's ultimate finding," (2) the opportunity given the offender to refute the evidence, and (3) "the consequences of the court's finding." *Id*. at 311 (noting that this list is not exhaustive). The first factor "follows from the Supreme Court's emphasis on assuring that findings be based on 'verified facts.'" *Id*. (quoting *Morrissey*, 408 U.S. at 484).  "The more significant particular evidence is to a finding, the more important it is that the releasee be given an opportunity to demonstrate that the proffered evidence does not reflect 'verified fact.'"  *Id*. The second factor – opportunity to refute evidence – includes not just confrontation and cross examination, but the ability to present contrary evidence.  *Id*. at 312 (noting that the district court prohibited the offender from retesting the drug sample). The third factor – the consequences of the court's finding – include the finding's impact on the decision to revoke supervised release and the sentence imposed. *Id.* (noting that the court's finding triggered the application of a mandatory minimum).

In evaluating good cause for presenting hearsay evidence, the court looks to "the difficulty and

expense in procuring the witnesses" and the "traditional indicia of reliability borne by the evidence." *Id*. (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 783 n. 5 (1973) and *Simmons*, 812 F.2d at 564). Affidavits and other documentary evidence may constitute "conventional substitutes," to live testimony. *Id*. at 313 (quoting *Gagnon*, 411 U.S. at 783 n. 5).  In particular, police reports have the traditional indicia of reliability to be admitted.  See *United States v. Walker*, 117 F.3d 417, 420-21 (9th Cir. 1997).

**IV.    ANALYSIS OF GOVERNMENT'S EVIDENCE**

**A.    UNAUTHORIZED ACCESS OF THE INTERNET**

On March 19, 2026, during a search of Michael Chand's residence, officers recovered an Android tablet which was connected to the internet.  Chand neither requested nor received authorization to have access to the internet.  This conduct is in violation of Special Condition Number 15, which states in part, *"You must not possess or use a computer or any device that has access to any "on-line computer service" unless approved by the probation officer."*

**B.    Charge 2: UNAUTHORIZED POSSESSION OF A CELL PHONE**

On March 19, 2026, during a search of Michael Chand's residence, officers recovered an Android tablet which was connected to the internet.  Chand neither requested nor received authorization to possess this electronic device or have access to the internet.  This Android tablet was capable of receiving voice/audio telephone calls.  This conduct is in violation of Special Condition Number 17, which states, *"You must possess and use only those cellular phones and phone numbers (including Voice over Internet Protocol [VolP] services) that have been disclosed to the probation officer upon commencement of supervision.  Any changes or additions are to be disclosed to the probation officer prior to the first use."*

**C.    POSSESSION OF SEXUALLY EXPLICIT CONDUCT**

Chand possessed sexually explicit images and videos as defined by 18 U.S.C. § 2256(2).  The date ranges for these images being accessed were March 11, 2026, to March 19, 2026.  This in violation of the special condition of supervised release which states in part, *"You must not view or possess any "visual depiction," or any photograph, film, video, picture, or computer or computer-generated image or picture…involving children, or "actual sexually explicit conduct" involving adults."*

### D.     Witness Testimony and Other Evidence

Probation Officer Lisa Hage will testify regarding a search she conducted at Chand's residence after she learned from Chand had contacted Victim Akemi Doe on or about March 17, 2026 (seven days after his last release) via Instagram.



FIGURE 1:  EXAMPLE SCREENSHOTS FROM VICTIM AKEMI DOE'S PHONE.  THE FIRST ONE WAS SENT ON MARCH 17, 2026, FROM ONE OF CHAND'S ALIAS ACCOUNTS. CHAND'S MESSAGES ARE ON THE LEFT OF EACH SCREENSHOT.

As can be seen in the first image above, the victim initially blocked Chand after the first few messages. At Detective Hirota's advice, the victim unblocked Chand and continued to engage with him to confirm it was him.  Tellingly, Chand asked the victim (screenshot #3) "has anybody from the government called you?"  He later tells her, "Feel like this is a setup."  *See* Exhibit 1, which contains the complete report regarding this contact.

After receiving this report, the Probation Office conducted a probation search of Chand's residence, on March 19, 2026.  During the search, PO Hage found an Android tablet that she confirmed was the device Chand had used to contact Victim Akemi Doe on Instagram.  PO Hage confirmed this by

asking Detective Hirota to call the device back when she (PO Hage) was holding it.  The device rang, showing the victim's contact card:



FIGURE 2: REDACTED PICTURE OF THE DEVICE CHAND USED TO CONTACT THE VICTIM, SHOWING THE DEVICE RECEIVING A CALL BACK FROM THE VICTIM (AT LAW ENFORCEMENT'S DIRECTION).

This evidence will suffice to show that Chand committed the violations alleged in Counts One and Two.

As to Count Three, PO Hage will testify regarding the results of the forensic search of the tablet. That search revealed that Chand has used the device, from March 10 (the day of his release) to March 19 2026, to search for videos containing "sexually explicit conduct which included age difficult females that appear teenage to adult."  This extraction also showed several thumbnails depicting pornography. The devices showed multiple searches for various kinds of pornography, which is in violation of Chand's condition that *"[He] must not view or possess any "visual depiction," or any photograph, film, video, picture, or computer or computer-generated image or picture…involving children, or "actual sexually explicit conduct" involving adults."*

//

//

//

//

//

//

The government will also call Probation Officer Paul Mamaril, who will testify that he received the following note from Chand's roommate:

FIGURE 3: CHAND PROVIDED THIS NOTE TO HIS ROOMMATE, WHO INITIALLY COMPLIED WITH ITS INSTRUCTIONS BUT THEN TOLD PO MAMARIL THE TRUTH AND HANDED HIM THE NOTE.

The note reads: "What to say to Paul [Mamaril;]  The tablet was yours, you misplaced it often logging into my social media to let my friends know I was alive."  The government will use this evidence to demonstrate Chand's attempt to cover up his use of this device, and rebut any claim that he did not have access to the device because it was in a locked room.

Finally, in addition to the above testimony, the government will introduce a jail call wherein Chand discusses opening locks in his house with a butterknife (also rebutting a claim he did not have access to the tablet because it was in a locked room) and evidence from the forensic examination of the tablet showing he accessed pornography.

AMENDED USA REVOCATION HEARING BRIEF                7

//

//

**V. CONCLUSION**

Upon the conclusion of the evidentiary hearing, the United States respectfully requests that the Court find that the defendant violated the terms of his supervised release, as alleged in Charges One through Three of the Superseding Petition.

Dated:  June 16, 2026

ERIC GRANT
United States Attorney

By:  /s/ ADRIAN T. KINSELLA
ADRIAN T. KINSELLA
Assistant United States Attorney